# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GLADYS M. LINDLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:11-cv-2266-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Gladys M. Lindley ("Lindley") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

## I. Procedural History

Lindley filed her application for Title II disability insurance benefits and

Title XVI Supplemental Security Income on April 3, 2007, alleging a disability onset date of April 2, 2007, due to pain in her right leg and hip, left ankle, lower lumbar spine, and neck with "nerve damage to both sides and shoulders," and arthritis in her joints. (R. 91-96, 112). After the SSA denied her applications on July 12, 2007, Lindley requested a hearing. (R. 70, 75). At the time of the hearing on September 17, 2009, Lindley was 57 years old, had an eighth grade education, and past relevant work that included light, semi-skilled work as a grocery store cashier, and medium, semi-skilled work as a certified nursing assistant. (R. 36, 38, 39, 51). Lindley has not engaged in substantial gainful activity since April 2, 2007. (R. 21).

The ALJ denied Lindley's claim on October 16, 2009, which became the final decision of the Commissioner when the Appeals Council refused to grant review on April 26, 2011, (R. 1-5, 16). Lindley then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

  (1)   whether the claimant is currently unemployed;

  (2)   whether the claimant has a severe impairment;

  (3)   whether the impairment meets or equals one listed by the Secretary;

  (4)   whether the claimant is unable to perform his or her past work; and

  (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Lindley had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One. (R. 21). Next, the ALJ acknowledged that Lindley's severe impairments of "status post hernia and lipoma in the right inguinal area, status post excision of lipoma and hernia repair, and osteoarthritis of the hips" met Step Two. *Id*. The ALJ then proceeded to the next step and found that Lindley did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 23). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Lindley

> has the residual functional capacity [RFC] to perform medium work [ ] except with some additional limitations.  The claimant is restricted from climbing ladders, ropes, and scaffolding.  The claimant is restricted from exposure to concentration of extreme cold.
> * * * *

> As for opinion evidence, significant weight is given to the opinion of Dr. Hayne. [ ] This opinion is consistent with the medical evidence of record. Although the claimant was subsequently found to have a hernia, she underwent surgery for the hernia. The medical records indicate that the claimant was subsequently released with no restrictions. Great weight is also given to the opinion of the state agency. [ ] Although this opinion is from a non-medical professional, it is consistent with the opinion of Dr. Hayne. Some, but not great weight is also given to the opinion of Dr. Norwood. [ ] Dr. Norwood's opinion is partially based upon the claimant's subjective complaints.

(R. 23, 25). In light of Lindley's RFC, the ALJ held that Lindley was "capable of performing past relevant work as a cashier and a certified nursing assistant. This work does not require the performance of work-related activities precluded by the claimant's [RFC]." (R. 25). Because the ALJ answered Step Four in the negative, consistent with the law, the ALJ found that Lindley was not disabled. (R. 26); *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Lindley asserts that the ALJ improperly determined her RFC because the ALJ (1) failed to properly consider Dr. Bharat Vakharia's findings, doc. 9 at 7, (2) erred in giving Dr. Van Hayne's opinion significant weight and the non-medical State Agency examiner's opinion great weight, *id.* at 8, (3) failed to consider fully Dr. Eston Norwood's opinion and include the limitations in Lindley's RFC, *id.* at 8-9, and (4) failed to clarify the record by "recontacting [examining physicians] or

obtaining a medical expert opinion," *id*. at 10, 11.  For the reasons stated below, the court finds that the ALJ's opinion is supported by substantial evidence.

A.   *The ALJ properly considered Dr. Vakharia's findings.*

On June 20, 2007, at the request of the Commissioner, Dr. Vakharia completed a consultative examination and reported that Lindley stated that she has (1) constant pain in her neck and shoulders that intensifies with movement, (2) constant mild to moderate lower back pain that is aggravated by standing, sweeping, mopping, bending, and lifting, (3) lower back pain that radiates to both legs but is more intense on the right, including numbness and tingling, (4) difficulty walking half a block, standing more than 30 minutes, sitting more than 14 minutes, lifting five pounds, holding objects in her hand, (5) finger and hand pain including swelling of the joints, and (6) epigastric discomfort.  (R. 242). Based on his physical examination of Lindley, Dr. Vakharia noted that Lindley (1) had no cyanosis, clubbing, edema, or deep vein thrombosis in her extremities, (2) was oriented, alert, and awake, (3) had a tender lumbosacral and cervical spine and limited cervical spine movement, (4) raised her right leg 40 degrees and her left 60 degrees, (5) experienced pain when moving her right hip, (6) moved her knee minimally, (7) walked a "few steps" on tip toes and heels, (8) can squat but needs assistance to stand, (9) had a normal gait, and (10) has a "weaker" hand grip at 3/5

with "minimal swelling of the PIP joint" and complains of pain in hands on palpitation, but can open a door know well and pick up coins. (R. 242-43). Consequently, Dr. Vakharia diagnosed Lindley with chronic neck and low back pain, chronic fatigue, right hip pain, bilateral hand pain and weakness, gastritis, and reflux disease. (R. 243).

Lindley contends that the ALJ failed to properly consider consulting examiner Dr. Vakharia's report which Lindley claims is inconsistent "with an RFC for medium work[1] which requires lifting up to 50 pounds." Doc. 9 at 7. According to Lindley, the ALJ failed to properly consider Dr. Vakharia's full report and relied instead primarily on the findings related to hand strength. Doc. 9 at 7. While Lindley is correct that the ALJ relied solely on the portion of Dr. Vakharia's report related to Lindley's hand strength, reliance on a single part of the report does not mean that the ALJ failed to consider the entire report. As the ALJ noted, Dr. Vakharia's findings simply failed to support Lindley's claim: "The claimant was noted to have 3/5 grip strength during the examination by Dr. Vakharia; however no other evaluation resulted in a finding of reduced grip

---

[1]Medium work"involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10; 20 C.F.R. § 404.1567.

strength. During that same examination, the claimant was able to open a door knob, pick up coins from a table, and oppose the tip of her thumb to all fingers." (R. 24).[2] Significantly, Dr. Vakharia placed no restrictions on Lindley and the rest of his findings suggest that Lindley can engage in activity, albeit with some pain. Although pain can, in fact, be disabling, nothing in Dr. Vakharia's findings suggest that Lindley suffers from disabling pain. Ultimately, Lindley has the burden to prove her disability. *See* 20 C.F.R. § 416.912(c). Based on this record, Lindley has not shown how Dr. Vakharia's report supports her claim or how the ALJ erred in his analysis of Dr. Vakharia's report.

B.   *Drs. Van Hayne and Norwood and the State Agency Disability Examiner*

Lindley challenges next the ALJ's assignment of weight to the reports of Drs. Hayne and Norwood and the RFC Assessment prepared by a non-physician disability examiner. Doc. 9 at 8-10. Specifically, the ALJ gave Dr. Hayne's assessment "significant weight" because the ALJ found it consistent with the medical evidence, "great weight" to the State Agency disability examiner's opinion because it was consistent with Dr. Hayne's opinion, and only gave limited weight to Dr. Norwood's opinion because the ALJ found that Dr. Norwood based his opinion partially on Lindley's subjective complaints. (R. 25).

---

[2] The ALJ did not assign any weight to Dr. Vakharia's opinion.

In light of Lindley's focus on the medical opinions of Drs. Hayne and Norwood, a review of the medical evidence as a whole is necessary. In that regard, on January 15, 2006, Lindley visited Cullman Regional Medical Center's ("Medical Center") emergency room with right groin pain. (R. 213). Lindley's pelvic and hip x-rays were negative and the Medical Center prescribed Lindley Darvocet for pain and discharged her in "improved" condition. (R. 214, 217-18). Eight months later, on August 13, 2006, Lindley presented again to Medical Center because she "pulled [her] right leg out at work." (R. 207). The physician noted Lindley's mild discomfort, diagnosed Lindley with inguinal strain, prescribed Ultram and Motrin for pain, and discharged her in improved condition. (R. 210).

Two days later, Lindley visited Dr. James Thomas ("Dr. Thomas") and he reported that Lindley was in "no apparent distress," that he observed a normal gait and right proximal thigh tenderness, and diagnosed Lindley with "right quadriceps strain." *Id*. (R. 187-88). Dr. Thomas prescribed Celebrex and released Lindley to return to work "with the restriction of no lifting greater than 10 lbs; no bending, stooping, squatting or twisting; no climbing stairs, ladders, or poles. Patient is not to push or pull anything." (R. 188). Lindley returned to Dr. Thomas on August 21, 2006, August 28, 2006, October 16, 2006, October 20, 2006 (during which

Lindley had a negative lumbar MRI), and October 25, 2006, for routine evaluations. (R. 189, 191, 193, 196-97). On Lindley's last visit to Dr. Thomas on October 25, 2006, Lindley obtained a referral to orthopedic surgeon Dr. Vincent Bergquist. (R. 199).

On October 31, 2006, Lindley visited Dr. Bergquist for right hip pain. (R. 240). Dr. Bergquist opined that Lindley was in "obvious distress if she attempts to walk," and observed that Lindley had marked pain when rotating her right hip, tenderness and fullness over the femoral triangle, and pain over the greater trochanter in response to deep palpation. (R. 240). The x-rays revealed "definite [osteoarthritis] changes of the right hip." *Id*. Dr. Bergquist diagnosed right hip pain, "probably femoral hernia," "referred pain"[3] to the right leg, and neural compromise by hernia at the inguinal ligament, prescribed Lortab, and recommended that Lindley delay returning to work until after he reviewed the MRI results. *Id*.

Dr. Bergquist evaluated Lindley again on November 6, 2006, and noted that the MRI revealed "femoral hernia in addition to osteoarthritis of her right hip." (R. 239). As a result, Dr. Bergquist referred Lindley to a general surgeon. *Id*.

---

[3]Referred pain is "pain felt in a part other than that in which the cause that produced it is situated." Sanders Elsvier, Dorland's Illustrated Medical Dictionary 1384 (31st ed. 2007).

Lindley returned to Dr. Bergquist on December 4, 2006, with hip pain and Dr. Bergquist noted that Lindley's consultation with the general surgeon "found no hernia and felt this fluid was in the hip joint," but that Lindley was in "obvious pain on flexion, internal/external rotation of her right hip and palpation over the groin crease." (R. 236). Dr. Bergquist prescribed Lortab and diagnosed Lindley with synovitis and osteoarthritis of the right hip and possible septic joint. *Id*.

Lindley visited Dr. Bergquist next on January 16, 2007, for reevaluation of her right hip. (R. 232). Dr. Bergquist noted "some hip arthritis on plain x-rays and MRI, but not severe," and an arthrogram that "suggests there might be some capsular tightness." *Id*. Lindley reported also that an intra-articular lidocaine shot made her hip pain "much better," and that hip motion caused pain. *Id*. Dr. Bergquist prescribed Mobic, an anti-inflammatory, and Lortab. *Id*.

Later that month, Dr. Bergquist evaluated Lindley and noted that there "have been no positive findings other than a fluid sac anterior to her hip that is not connected to her hip. . . . At this point we have not had any success treating with Medrol or with nonsteroidal agents. I have recommended the patient go back to work even if it is on a limited ambulation and seated capacity." (R. 231). Finally, on February 15, 2007, Dr. Bergquist released Lindley to "return to work full duty." (R. 229).

On October 11, 2007, Dr. Robert Walker, a surgeon, evaluated Lindley for "possible right groin hernia." (R. 261). Dr. Walker opined that Lindley had "a hint of a hernia on the right side." *Id*. Three weeks later, on November 6, 2007, Dr. Walker performed a "right inguinal exploration" and removed a lipoma from Lindley's right inguinal area. (R. 263-64). Dr. Walker evaluated Lindley on November 13, 2007, and reported that she "was a little numb anterior to the wound," restricted Lindley to lifting 15 pounds, and instructed her to return in three weeks. (R. 265). When Lindley returned on December 5, 2007, Dr. Walker reported Lindey "improved" and in "a little bit of discomfort in her right groin and medial aspect of her leg," and instructed her to return in one month. (R. 266). Lindley's last visit with Dr. Walker occurred on January 15, 2008, where he reported Lindley "doing generally satisfactorily" and that he did "not have any new recommendations. [Lindley] can resume her usual activity." (R. 267).

While being treated by Dr. Walker, Lindley also sought treatment at the Community Free Clinic ("Free Clinic"). The first visit occurred on August 7, 2007, where the treating physician noted that Lindley had a right groin sprain, "marked pain" over her right ileopubic ligament, pain on inversion and eversion on her left hip, and right hip pain, and prescribed Naprosyn. (R. 269). Lindley returned to the Free Clinic on August 28, 2007, and was diagnosed with a painful

right groin. (R. 270). The treatment notes are otherwise illegible. Thereafter, Lindley visited the Free Clinic regularly through February 10, 2009, (R. 271, 273, 276, 277, 278, 279, 280, 286, 287), and the treating physicians' diagnoses related to her right hip pain and the medications prescribed remained unchanged, except for a prescription of the steroid Prednisone on February 5, 2008, (R. 277), Neurontin on October 14, 2008, (R. 286), and Flexeril on February 10, 2009, (R. 290). The Free Clinic physician noted on November 13, 2008, that the Neurotonin proved effective in treating Lindley's pain. (R. 287).

Having reviewed Lindley's medical history, the court turns now to the three reports at issue. First, on June 29, 2007, Dr. Hayne completed a non-examining disability determination where he opined that based on Lindley's diagnoses of "osteoarthritis right hip and gastro reflux disease, the best claimant can be is medium RFC [ ] with stand/walk about 6 hours, sit 6-8 hours in and 8-hour workday with normal breaks, frequent P&P RLE; positionals are all frequent with occasional ladders/scaffolds/ropes; manipulation no limits as range of motion should near normal and dexterity normal of hands and no allegations with any of these in longitudinal MER up to early 2007 so no limits; [ ] environmentals are all unlimited except avoid concentrated exposure to cold and avoid concentrated exposure to hazards." (R. 247). Second, on July 5, 2007, a non-physician State

Agency Disability Examiner completed a Physical Residual Functional Capacity Assessment and opined that Lindley could occasionally climb ladders, ropes, or scaffolds, and lift or carry 50 pounds, and frequently balance, stoop, kneel, crouch, crawl, climb ramps or stairs, lift or carry 25 pounds, and stand, walk, or sit approximately 6-hours in an 8-hour workday. (R. 253-54). The Examiner substantiated his findings by commenting that Lindley's MRI was negative, x-ray revealed "some [osteoarthritis] of the right hip," right straight leg raises were 40 degrees and 60 degrees on the left, hand grip strength was 3/5, gait was normal, and tip toe and heel walking was limited. (R. 253-54). Significantly, the Examiner opined that Lindley "does have a [medically determinable impairment] that could reasonab[ly] produce her stated symptoms/limitations due to [osteoarthritis] of the hip. Claimant may have some limitations, however not to where it will prevent all work activity." (R. 257).

     Finally, on May 7, 2009, consulting neurologist Dr. Norwood evaluated Lindley's back and leg pain and noted that, although Lindley has good range of motion in her hip, neck, lower back, right shoulder, and arms bilaterally, pain limits Lindley's range of motion nonetheless. (R. 292). According to Dr. Norwood, Lindley had normal strength, intact sensation, used her hands to open and close doors and operate a button, walked on her heels and toes, and rose from

a seated position. (R. 293). Dr. Norwood diagnosed Lindley with "arm, leg, and back pain without neurologic deficit. She does not have neurologic impairment to do work related activities, but reports pain limiting her ability to stand or walk for long periods of time." *Id*. Dr. Norwood completed a Medical Source Statement of Ability to do Work-Related Activities form "consistent with [his] findings of no neurologic deficit but [Lindley's] complaints of arm and leg pain" and opined that Lindley can (1) frequently lift and carry up to 20 pounds, occasionally lift and carry up to 50 pounds, and never lift or carry up to 100 pounds, (2) sit one hour at one time and stand and walk 30 minutes at one time, sit 6 hours in an 8-hour workday, and stand and walk one hour in an 8-hour workday, (3) continuously reach, handle, finger, feel, push, and pull with her right hand and frequently reach, handle, and push and pull and continuously finger and feel with her left hand, (4) frequently operate foot controls with both feet, (5) never climb ladders or scaffolds, kneel, crouch, or crawl, occasionally stoop, frequently climb stairs and ramps, and continuously balance, and (6) shop, travel without assistance, ambulate without an assistive device, use public transportation, climb stairs at a reasonable pace, prepare simple meals and feed herself, care for her personal hygiene, and handle paper files. (R. 295-300).

      Based on this court's review of the entire record, the ALJ's opinion

assigning weight to the medical reports is supported by substantial evidence. "It is well-established that 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Generally, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(c)(4). Additionally, the "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Although the ALJ failed to assign any weight to Lindley's treating physician Dr. Bergquist's findings, reversal is not warranted because the opinions of Drs. Hayne and Norwood and the non-physician disability examiner are supported by Dr. Bergquist's opinion and by the record as a whole. Specifically, Dr. Bergquist treated Lindley from October 2006 through February 2007 and

acknowledged that hip motion causes Lindley to "recoil in pain." (R. 232). However, Dr. Bergquist released Lindley to "full active employment" on February 14, 2007, (R. 230), finding no evidence of "acute injury," *id.*, and "no positive findings" related to the objective tests except "some [non-severe] hip arthritis" revealed on Lindley's x-rays and MRI, (R. 232). Likewise, physicians at Free Clinic who treated Lindley from August 2007 to February 2009 for hip and knee pain never placed any restrictions on Lindley related to her pain and, in fact, on November 13, 2008, noted that Lindley's pain was "controlled by Neurontin." (R. 287). In other words, based on the court's review of the record, Dr. Bergquist's and the Free Clinic physicians' opinions are consistent with Dr. Hayne's and the non-physician disability examiner's opinion and with a RFC for medium work.

     Regarding consulting physician Dr. Norwood, the ALJ gave his opinion limited weight because Dr. Norwood relied primarily on Lindley's subjective complaints. (R. 24, 293). The ALJ's decision is consistent with the regulations which provide that the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3) . Therefore, to the extent the ALJ failed to include Dr. Norwood's limitations in Lindley's RFC, the error was harmless because Dr. Norwood's findings are not based on objective

medical evidence.

In short, the ALJ did not err in the weight assigned to the opinions of Drs. Hayne and Norwood and the non-physician disability examiners in determining Lindley's RFC. Their opinions were either supported by the medical records or, in Dr. Norwood's case, based on Lindley's subjective complaints. Therefore, the court finds that the ALJ's opinion is supported by substantial evidence.

C.   *The ALJ did not err in failing to order a medical source opinion.*

Lastly, the court disagrees with Lindley's contention that the ALJ erred by failing to "clarify the record as to [the] RFC" by contacting the physicians or ordering a medical expert opinion. Doc. 9 at 10. The ALJ is not required to order additional medical opinions when, as here, the record contains sufficient evidence for the ALJ to make a disability determination. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Indeed, the ALJ's finding that Lindley has an RFC for medium work is consistent with the findings of Drs. Bergquist, Norwood, and Thomas, the Free Clinic physicians, and the non-physician disability examiner. In the final analysis, ultimately, Lindley must meet her burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Notwithstanding Lindley's bald assertions to the contrary, the record evidence simply does not support her disability claim, and she failed to articulate why

additional medical evidence is warranted to evaluate her claim. Therefore, the court finds that the ALJ's decision is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Lindley is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 18th day of September, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE